USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/4/2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAKEY DELI GROCERY INC.,

        Plaintiff,

        -v-

UNITED STATES OF AMERICA,

        Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

11 Civ. 2098 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    Plaintiff Makey Deli Grocery Inc. ("Makey") seeks judicial review of a final decision of the United States Department of Agriculture ("USDA"), Field and Nutrition Services ("FNS" or the "Government"), disqualifying Makey from participating in the Supplemental Nutrition Assistance Program ("SNAP") for a period of one year. The parties have consented to have the undersigned handle this case for all purposes and have now cross moved for summary judgment. For the reasons stated below, the Government's motion is GRANTED and Makey's cross-motion is DENIED.

### I.   Background

    Makey owns and operates a grocery store located at 1229 Franklin Avenue in the Bronx, New York. (Complaint, dated Mar. 25, 2011 ("Compl.") ¶¶ 1-2) (Dkt. No. 1)). FNS is an administrative agency of the United States that administers SNAP under the Food and Nutrition Act of 2008 (the "Act"). 7 U.S.C. § 2011 et seq.; see also 7 C.F.R. § 271.3. In January 2005, FNS approved Makey to participate in SNAP. (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated Feb. 8, 2012 ("Pl. Mem.") at 2 (Dkt. No. 22); Administrative Appeal Record, dated Oct. 14, 2011 ("A.R.") at 1-16, 136 (Dkt.

1

USDC SDNY
DATE SCANNED 6/4/2012

No. 14)).  SNAP, previously known as the Food Stamp Program, is a federal benefits program that enables qualified households or "beneficiaries" to purchase food items at participating stores (known as "firms" under the regulations).  See 7 U.S.C. §§ 2011, 2013(a); 7 C.F.R. § 278.1.  SNAP beneficiaries receive a government-issued Electronic Benefits Transfer ("EBT") card and can purchase designated food items at participating firms by swiping their EBT card through an electronic reader.  7 U.S.C. § 2016(f)(3)(B); 7 C.F.R. §§ 274.2, 274.3.  The Government later redeems the benefits and pays the full face value of the purchase to the participating firm.  7 U.S.C. §§ 2013(a), 2019.  FNS monitors SNAP participants and their transactions to ensure compliance with SNAP regulations.  7 C.F.R. § 271.3.

When Makey was approved to participate in SNAP, its owner, William Troncoso ("Troncoso"), received a training video and program materials that included a compilation of SNAP rules and regulations and a list of penalties that may be imposed for violations.  (A.R. 27).  One such regulation prohibits participating firms from accepting food stamp benefits as "payment for items sold to a household on credit."  7 C.F.R. § 278.2(f) (the "credit account rule" or the "rule").  The penalty for violating the credit account rule is disqualification from SNAP for a period of one year.  Id.; see also 7 C.F.R. § 278.6(e)(4)(ii).  However, if FNS determines that such disqualification would pose a "hardship" to SNAP beneficiaries, it may, in its discretion, impose a civil monetary penalty instead.  7 C.F.R. § 278.6(a).

In February, March, and April 2010, FNS's electronic alert system detected several red flags in Makey's SNAP activity.  These red flags included an unusually high number of SNAP transactions within implausibly short time frames (A.R. 140-41); frequent instances in which multiple transactions were conducted with a single SNAP beneficiary on the same day (A.R. 140); high-dollar SNAP transactions relative to the type and price of items stocked by Makey

(A.R. 141, 143); and a disproportionate number of round-dollar sales figures. (A.R. 139). In addition, a comparison of Makey's SNAP sales against comparably sized firms indicated that beneficiaries were frequently bypassing firms of better quality and selection to shop at Makey. (A.R. 146). Because this abnormal profile was potentially indicative of illegal benefits trafficking, FNS staff visited Makey on April 14, 2010 to conduct a site inspection. (A.R. 137-38). FNS confirmed during this visit that food items on Makey's shelves were priced in variations of an $XX.X9 cent value (rather than an $XX.00 cent variation) and that Makey did not round off transactions to an $XX.00 value or promote specials or circulars that could explain the high number of round-dollar figure sales charged to FNS. (A.R. 139). FNS also observed that Makey did not carry expensive food items, sell food in bulk, or have any other discernible explanation for the large number of high-dollar figure sales reported. (A.R. 139, 141). Based on its investigation, FNS concluded that there was no innocent explanation for the abnormal transaction patterns observed at Makey. (A.R. 147).

In a June 16, 2010 letter, FNS advised Troncoso that Makey was charged with food stamp trafficking (i.e., exchanging cash for SNAP benefits) in violation of 7 C.F.R. § 271.2 and explained that a final agency determination of trafficking would result in Makey's permanent disqualification from SNAP and the possibility of civil and/or criminal action by the United States Attorney. (A.R. 33-34). Troncoso responded to the charges by letter dated June 22, 2010. (A.R. 54-55). He denied trafficking and offered several explanations for the atypical transactions observed by FNS, including that the store "offered its clients in-store credit." (A.R. 54). Troncoso explained that "many times the food stamp benefits awarded" to Makey's customers "are not enough for the whole month." (A.R. 54). Makey therefore allowed SNAP customers "to purchase food products after they run out of benefits. Once their . . . benefits have been

3

replenished, they return to pay what is owed . . . . This can result in the multiple withdrawals and the unusually large transactions described in your report." (A.R. 54). As evidence of Makey's credit sales program, Troncoso provided FNS with a log book of SNAP sales made on credit and letters from SNAP beneficiaries who claimed to have received store credit. (A.R. 74-105, 56-73). Troncoso also explained that he was "now aware that accepting EBT benefits as payment for in store credit is against the rules and regulations of the Food Stamp Program and [Makey would] no longer continue to accept such payments." (A.R. 54).

FNS's New York City Field Office reviewed Troncoso's letter and responded by letter dated August 11, 2010. (A.R. 169-70). The Field Office found certain aspects of Troncoso's explanation "not credible" and inconsistent with the April 14 inspection. (A.R. 165). It also noted that Troncoso, in attempting to explain the atypical transactions, had admitted to practices that, while not trafficking, violated SNAP regulations. (A.R. 166). The Field Office emphasized that, when first authorized to participate in SNAP, Makey had received "training videos and program materials[] [and] instruct[ion] on the Rules and Regulations governing SNAP with special emphasis on trafficking and credit." (A.R. 164). Nevertheless, the Field Office "accept[ed] the credit ledger and written statements from the customers as explanation for the transactions" and declined to pursue the trafficking allegations. (A.R. 168). However, based on Troncoso's admission to accepting SNAP benefits in payment for items bought on credit, the Field Office found that Makey had violated the credit account rule. (A.R. 167-69). It also concluded that Makey was not eligible for a civil monetary penalty in lieu of the one-year disqualification presumptively imposed for such violations because there were "other authorized retail stores in the area selling as large a variety of staple foods at comparable prices" and thus

Makey's disqualification would not result in hardship to SNAP beneficiaries.  (A.R. 169) (citing 7 C.F.R. § 278.6(f)(1)).

By letter dated August 16, 2010, Troncoso timely appealed the Field Office's determination to the Administrative Review Branch of FNS ("the Review Office").  (A.R. 172-74).  Troncoso's appeal letter largely reiterated the points he had made in his June 16 letter and again admitted that Makey had "provided store 'credit' to a few of [its low income customers] in order to help them" while explaining that the store's "intentions in doing this were always honest and we were simply ignorant as to the rules and regulations of the food stamp program that prevented us from doing this."  (A.R. 173).  Troncoso urged FNS to "take all of the facts I have brought to your attention into consideration when assessing this situation and to refrain from disqualifying my business from the Food Stamp Program."  (A.R. 174).

On February 28, 2011, the Review Office rendered a Final Agency Decision sustaining the Field Office's imposition of the one-year disqualification.  (A.R. 185-90).  The Review Office noted that the Field Office had "considered and accepted the information provided by [Makey] in support of its contention that the acceptance of SNAP benefits as payment on credit accounts explains the transaction activity detailed in the Charge Letter."  (A.R. 189).  However, the Review Office found that "a record of program participation with no previously documented violations does not constitute valid grounds for dismissing the present serious charges or for mitigating the impact of the violations upon which they are based."  (A.R. 190).  Moreover, it observed that "[t]he record, as well as agency data, indicates that there are at least 50 authorized retail food stores within a .33 mile radius of [Makey], including various grocery stores and supermarkets.  Given the operative regulations and policy . . . regarding the imposition of hardship civil money penalties, [Makey] clearly does not qualify for such a penalty."  (A.R. 190).

The Review Office concluded that because "a one-year disqualification is in fact the appropriate sanction imposed upon a retailer found to have accepted SNAP benefits as payment on credit accounts, the decision of the Field Office was correct and appropriate." (A.R. 190).

On March 25, 2011, Makey filed a timely complaint in this Court, seeking judicial review of FNS's finding that Makey violated SNAP regulations and its determination that a one-year disqualification was the appropriate sanction for such violation. (Compl. ¶¶ 8, 23).[1] On September 6, 2011, the case was referred to the undersigned for all purposes under 28 U.S.C. § 636(c) pursuant to the parties' mutual consent. (Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Dkt. No. 6)). The parties have since filed cross-motions for summary judgment, with the Government seeking a determination that the agency's decision to disqualify Makey from the program for one year was not arbitrary or capricious while Makey requests an order annulling the agency's decision. (Dkt. Nos. 10, 20).

## II. Discussion

### A. Standard of Review

A SNAP firm such as Makey, aggrieved by a final administrative action of FNS, may obtain judicial review of the agency decision. 7 U.S.C. § 2023(a)(13). If the firm disputes FNS's finding that it violated program regulations, a district court generally reviews the matter de novo, in order to "determine the validity of the questioned administrative action." Yafaie v. United States, No. 94 Civ. 7825 (KMW), 1995 WL 422169, at *1 (S.D.N.Y. July 18, 1995) (citing 7 U.S.C. § 2023(a)(15)). "However, if a plaintiff concedes that the violations took place,

---

[1] The Complaint also requested a stay of disqualification "pending a trial de novo by the court of the validity of the Disqualification." (Compl. ¶ 23). Because the Government voluntarily agreed to stay disqualification pending judgment in this case, that issue is not before the Court. (See Memorandum of Law in Support of the Government's Motion for Summary Judgment, dated Oct. 14, 2011 ("Def. Mem.") at 5 (Dkt. No. 11)).

the district court's review of the penalty is limited to whether the imposition was arbitrary or capricious."  El Tepeyac Grocery Inc. v. United States, No. 11 Civ. 5837 (ALC), 2012 WL 1227956, at *2 (S.D.N.Y. Apr. 10, 2012) (citing Lawrence v. United States, 693 F.2d 274, 276 (2d Cir. 1982) (further citations omitted)); see also Lugo v. United States, No. 08 Civ. 2960 (RJS), 2009 WL 928136, at *3 (S.D.N.Y. Mar. 30, 2009).

Here, there is no factual dispute that Makey violated SNAP regulations by accepting SNAP benefits as payment for items previously purchased on credit.  Makey has repeatedly conceded this point, both in letters it submitted to FNS during the administrative review process and in the complaint it filed in this Court.  (A.R. 54, 172-74; Compl. ¶¶ 17-18).  Therefore, notwithstanding Makey's request for de novo review of FNS's determination that it violated SNAP regulations (Compl. ¶ 8; Pl. Mem. at 6), based on Makey's admissions, the Court finds as a matter of law that a violation has occurred.  See Lugo, 2009 WL 928136, at *3 (finding no factual dispute of existence of violations where plaintiff conceded in letters submitted to FNS that violations occurred and "submitted letters from customers attesting to his exchange of store credit for Program benefits").  The only issue before the Court, therefore, is whether the one-year disqualification imposed by FNS was arbitrary or capricious.  See id. (citing Nagi v. U.S. Dep't of Agr., No. 96 Civ. 6034 (DC), 1997 WL 252034, at *3 (S.D.N.Y. May 14, 1997)).

"An agency's action is arbitrary and capricious if it was 'unwarranted in law or without justification in fact.'"  Nagi, 1997 WL 252034, at *2 (quoting Willy's Grocery v. United States, 656 F.2d 24, 26 (2d Cir. 1981)); see also De La Nueces v. United States, No. 91 Civ. 6664 (WCC), 1992 WL 58851, at *2 (S.D.N.Y. Mar. 16, 1992).  Courts in this district have repeatedly held that, "[i]f the agency has followed its guidelines . . . the reviewing court may not overturn the decision as arbitrary and capricious."  Nagi, 1997 WL 252034, at *2; see, e.g., El Tepeyac

Grocery Inc., 2012 WL 1227956, at *2 (collecting cases); see also Young Jin Choi v. United States, 944 F. Supp. 323, 325 (S.D.N.Y. 1996) ("A sanction is not arbitrary and capricious when a federal agency properly adheres to its own regulations and guidelines when imposing it."). Thus, "[i]f the penalty imposed is in accordance with the settled policy of the F[N]S, it is not arbitrary or capricious." Yafaie, 1995 WL 422169, at *1.[2]

"Whether the imposition of a penalty by FNS [is] arbitrary or capricious is a matter of law appropriately determined on a motion for summary judgment." Yafaie, 1995 WL 422169, at *1 (citing Ai Hoa Supermarket, Inc. v. United States, 657 F. Supp. 1207, 1208-09 (S.D.N.Y. 1987)); see also Lugo, 2009 WL 928136, at *3. The "focal point for judicial review" is "the administrative record already in existence." Karpova v. Snow, 402 F. Supp. 2d 459, 465 (S.D.N.Y. 2005) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

### B. The One-Year Disqualification Adheres to SNAP Regulations

SNAP regulations provide that "[f]ood stamp benefits shall not be accepted by an authorized retail food store in payment for items sold to a household on credit." 7 C.F.R. § 278.2(f). Though previous versions of the regulations did not specifically identify the penalty to be imposed for such violations, effective March 2, 2009, FNS amended Section 278.2(f) to make explicit that violations are to be penalized by a one-year disqualification from SNAP. Id. ("A firm that commits such violations shall be disqualified from participation in the Food Stamp Program for a period of one year.") (emphasis added); see also 73 Fed.Reg. 79591, at *79595 (Dec. 30, 2008) (final rule-making action adopting amendments effective March 2, 2009). Also

---

[2] Makey argues that this standard of review is "simplistic" and, "[i]f accepted blindly, . . . usurps judicial review of agency action, no matter how absurd, self contradictory or shocking to the conscience of the court or unjust it is." (Pl. Mem. at 7). However, Makey does not suggest an alternative standard and provides no authority that this Court may apply a different one. Therefore, the Court applies this well-settled standard.

effective March 2, 2009, FNS amended the penalty section of the regulations to provide that "FNS shall . . . "[d]isqualify the firm for one year if . . . [t]he firm has accepted [SNAP] benefits in payment for items sold to a household on credit." 73 Fed. Reg. at *79595 (codified at 7 C.F.R. § 278.6(e)(4)(ii)). Thus, the one-year disqualification FNS has imposed on Makey in this case conforms to FNS guidelines, which provide that a one-year disqualification is the presumptive sanction for a violation of the credit account rule. See e.g., Lugo, 2009 WL 928136, at *4 n.2 (describing the one-year disqualification as "mandatory" under the regulations).

### C. FNS's Determination Not to Impose a Civil Monetary Penalty in Lieu of Disqualification Was Not Arbitrary or Capricious

SNAP regulations do allow FNS, in its discretion, to impose a civil monetary penalty instead of a one-year disqualification if it determines that a "disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." 7 C.F.R. § 278.6(f)(1). However, in Makey's case, FNS found that there were at least 50 stores of similar size and inventory within a .33 mile radius of Makey, at which local beneficiaries could shop while Makey was disqualified from the program. (A.R. 160-70, 190). This factual finding supported FNS's conclusion that Makey's disqualification would not result in hardship to SNAP households. See, e.g., Lawrence, 693 F.2d at 277 (record "amply support[ed]" finding of no hardship where other qualified food stores were located within one mile radius of plaintiff); Lugo, 2009 WL 928136, at *4 (disqualification not arbitrary and capricious where there were "several authorized retail food stores within one mile of Plaintiff's store").

Makey argues that FNS's determination that Makey's disqualification would not result in hardship was arbitrary and capricious. (Pl. Mem. at 9-13). Makey points to a "check list of criteria" used by FNS to decide whether a civil monetary penalty was warranted and argues that

9

"the agency's own conclusions" with respect to these criteria favored imposition of the civil monetary penalty instead of disqualification. (Pl. Mem. at 11). However, the list Makey relies upon in making this argument was used by FNS in the context of investigating and charging trafficking violations, rather than the credit violations forming the basis for the sanction ultimately imposed. (A.R. 161). FNS's findings with respect to these criteria are irrelevant because, as Makey concedes, FNS did not pursue the trafficking charges. (Pl. Mem. at 12; A.R. 168, 189). Nor is there any indication that FNS relied upon these criteria in assessing whether a civil monetary penalty was warranted in the context of the credit account charges.[3] Instead, FNS premised its decision to impose the presumptive one-year disqualification on its finding that such a penalty would not cause hardship to SNAP households. (A.R. 162, 190). That finding was well supported by the record, which established that "at least fifty authorized retail food stores [existed] within a .33 mile radius" of Makey (A.R. 190), including two within a tenth of a mile that were "reasonably accessible" and sold "comparable or better staple foods." (A.R. 162).

Makey also takes issue with FNS's purported failure to consider whether the nearby stores offered "as wide a variety of food staples" or whether those food items were offered "at comparable prices." (Pl. Mem. at 13). However, FNS's determination is not "utterly devoid" of analysis on these criteria, as Makey argues. (Id.) First, FNS observed that Makey's stock was "limited," "dirty," and "disorganized," and "included substantially more general household items than that of staple foods items[,] which were dusty, dirty, dented and [had] labels [that] were faded, giving the impression that the food had not been replenished for quite some time." (A.R. 166). Thus, FNS found that Makey's own staple offerings left something to be desired. Second,

---

[3]     At least three of these criteria were trafficking-specific and the rest relate to issues of culpability that appear irrelevant to FNS's determination of hardship under 7 C.F.R. § 278.6(f)(1). (A.R. 161).

10

it identified three firms within 4/10 of a mile of Makey that were "reasonably accessible" and sold "comparable or better staple foods" (A.R. 162), and seven small grocery stores within one half of a mile that it determined to be "well-stocked" and capable of "accommodat[ing] EBT customers." (A.R. 145). Third, FNS observed that Makey did not "offer specialty items . . . not available elsewhere"; that there was no "low-income housing project, elderly apartment complex, halfway house or homeless shelter in the area" that might increase the likelihood of hardship flowing from disqualification; and that no "other factors exist[ed] which need[ed] to be taken into consideration" in assessing potential hardship to SNAP beneficiaries. (A.R. 162). Finally, FNS found that, despite not offering bulk food or higher priced food items, Makey was involved in an unusually high number of "high dollar SNAP transactions" (A.R. 181) and that Makey's average SNAP transaction was $3.54 higher than the state average for comparably-sized grocery stores. (A.R. 144). These findings suggest, at a minimum, that Makey is not priced more competitively than its nearby competitors. Given FNS's detailed fact-finding with regard to Makey's inventory, high dollar SNAP transactions, and the number and quality of nearby firms, the Court does not find arbitrary or capricious FNS's failure explicitly to conduct a price comparison with nearby firms.

Makey also has submitted an affidavit from Troncoso in support of its contention that a one-year disqualification will result in hardship to SNAP beneficiaries. (Affidavit in Opposition to Motion by Defendant and Support of Cross Motion, filed Feb. 8, 2012 (Dkt. No. 23)). Because this affidavit was not before FNS, the Court declines to consider it here. See, e.g., Nelson v. Unum Life Ins. Co. of Am., 421 F. Supp. 2d 558, 573 (E.D.N.Y. 2006) (holding that, where an "affidavit was not part of the administrative record, it would be improper to consider it" on judicial review); Karpova, 402 F. Supp. 2d at 465 (holding that "the parties have no right

11

to add to the Administrative Record" on judicial review) (citation omitted); see also Broad St. Food Mkt., Inc. v. United States, 720 F.2d 217, 221 (1st Cir. 1983) ("It is particularly inappropriate to accept new evidence on the question of hardship, since the statute specifically commits that determination to [FNS] discretion.").[4]

      Finally, the Court notes that even where hardship criteria are met, imposition of the monetary penalty in lieu of disqualification is discretionary with FNS, not mandatory. See 7 C.F.R. § 278.6(f)(1) (stating that, where the hardship criteria are met, "FNS may impose a civil money penalty as a sanction in lieu of disqualification") (emphasis added).  Thus, even had FNS agreed with Makey that hardship to SNAP households would result from Makey's disqualification, imposition of the one-year disqualification would still be within its discretion, and not necessarily arbitrary or capricious.  See, e.g., El Tepeyac Grocery Inc., 2012 WL 1227956, at *3 ("The fact that FNS had the discretion to impose a lesser sanction . . . but chose not to . . . is neither arbitrary nor capricious.").

      **D.**    **Makey's Appeal to Fairness Does Not Warrant a Finding that the One-Year Disqualification Was Arbitrary and Capricious**

      Makey also argues that imposition of a one-year disqualification "for some credit sales to the indigent constitutes in general, arbitrary and capricious agency action . . . ."  (Pl. Mem. at 9-10).  The thrust of this argument appears to be that, regardless of the unambiguous notice set forth in the regulations, the sanction is unfair.  (See id. at 14 (arguing that this was a first offense, that Makey had received no prior warning, and that Makey acted out of compassion for its customers)).  With respect to this argument, Makey relies heavily on Bani #2 Food Corp. v.

---

[4]    Even if I were to consider Troncoso's affidavit, I do not believe it provides sufficient additional information to warrant a reversal of FNS's decision to disqualify, given FNS's findings with respect to other nearby stores.

12

United States, in which Judge Hellerstein found that a one-year disqualification was an arbitrary and capricious sanction for a credit account violation.  See Bani #2 Food Corp. v. United States, No. 10 Civ. 0005 (AKH) (Nov. 3, 2010) (Summary Order).  However, the violations that occurred in Bani took place before FNS adopted its March 2009 revisions to the SNAP regulations, at a time when the SNAP regulations did not specify a sanction for a firm's violation of the credit account rule.  (See Reply Declaration of Brandon H. Cowart, Exhibit 1 (Transcript in Bani #2 Food Corp. v. United States, dated Nov. 3, 2010) at 2:15-22 (Dkt. No. 25-1)).  As such, Judge Hellerstein's determination was based on the fact that Bani had never received any warning and that there was no specific guidance that might have alerted Bani to the severity of the sanction for such a violation.  (Id. at 12:17-18 (noting the "absence of prior warnings" and "the ambiguity of the regulation")).  Unlike the violations at issue in Bani, Makey's violations took place in February through April 2010, well after FNS had amended its regulations to make explicit that credit account violations would be sanctioned by a one-year disqualification.  (A.R. 136).  Because these amendments created the specific guidance and clarity that Judge Hellerstein found lacking in the pre-2009 regulations, Bani is inapposite.

     Other than citing Bani, Makey has not framed its argument that the one-year disqualification "constitutes, in general, arbitrary and capricious agency action" in legal terms nor provided any further authority that might enable this Court to consider it more fully.[5]  Without such further authority, the Court finds that the one-year disqualification does not constitute arbitrary or capricious agency action.  Courts in this district have repeatedly found

---

[5]    Moreover, Makey does not address the fact that "FNS must consider the interest of the Program and the fairness, not only to competitors but to those that adhere to the rules and regulations of the SNAP and must be also fair to those retailers that have been penalized for similar violations."  (A.R. 168).

such disqualifications to be a rational and proper exercise of FNS authority. See, e.g., El Tepeyac Grocery, 2012 WL 1227956, at *6 (affirming six-month disqualification for sale of items ineligible for SNAP redemption); Lugo, 2009 WL 928136, at *3-4 (affirming one-year disqualification for violation of the credit account rule); Yafaie, 1995 WL 422169, at *2 (affirming three-year disqualification without prior warning for sale of SNAP ineligible items).

In sum, based on the administrative record, the Court finds that FNS adhered to its own regulations in determining that no hardship would result from Makey's disqualification and that a one-year disqualification was appropriate. This determination found ample support in the record and was consistent with the governing regulations and controlling case law. Accordingly, it was neither arbitrary nor capricious.

### III. Conclusion

For the foregoing reasons, the Government's motion for summary judgment is granted and Makey's cross-motion for summary judgment is denied. Makey's complaint is dismissed in its entirety. The Clerk is directed to enter judgment consistent with this Opinion and Order.

**SO ORDERED.**

Dated: New York, New York
June 4, 2012

JAMES L. COTT
United States Magistrate Judge

**Copies of this Opinion and Order have been sent to counsel by ECF.**

14